JOHN R. HINZ, AS ADMINISTRATOR, ETC., OF OSCAR C. HINZ, RESPONDENT, v. JOHN H. STARIN, APPELLANT.

*Action for negligence — no recovery can be had when the party is injured by his own act, done with knowledge of what the result will be.*

Upon the trial of this action, brought by the plaintiff to recover damages for the death of his intestate, which was alleged to have been caused by the negligence of the defendant, it appeared that the plaintiff's intestate went to a pleasure resort and bathing ground kept by the defendant, and dived from the top of a structure erected by the defendant, to which ropes to be used as a swing for bathers were fastened, from an elevation of seventeen feet into water three and one-half feet deep, and that the injuries which caused his death were occasioned by his head coming in contact with the hard bottom.

*Held,* that as the deceased could have had no misunderstanding as to the depth of the water, as there were from twenty-five to fifty men standing in the water which came up to their waists, he was guilty of such negligence as to require the court to grant a motion for a nonsuit.

APPEAL from a judgment, entered upon a verdict at the Westchester Circuit in favor of the plaintiff, and from an order denying a motion for a new trial, made upon the minutes of the justice before whom the action was tried.

On July 26, 1885, Oscar Hinz, the plaintiff's intestate, while bathing at Glen Island, was killed while diving from the top of a trapeze structure. The appellant claims that the structure was not designed to be used as a place to dive from, and that the deceased was killed by reason of his own negligence. When the defendant Starin opened Glen Island, in 1881, he carefully prepared this bathing place by cleaning off the sedge and mud and filling it up with sea sand to the depth of ten or twelve inches, carefully covering all the rock. The trapeze structure was a structure similar to a mason's "horse," and from the top beam depended five ropes, three with rings and two with a bar, all designed to be used as swings by the bathers. The horse was about nine feet high from the surface of the water at high tide and sixteen at low. It was buried in the sand about ten inches, so as to rest on the rock. The accident occurred between 2 and 3 P. M. At this time the tide was more than half low, which would make the depth of water about three and one-half feet, as the place is bare at low water. At the time of the accident there were about twenty-five bathers, some of whom were standing in the water about the trapeze.

*W. W. Goodrich,* for the appellant.

*Martin J. Keogh,* for the respondent.

PRATT, J.:

The plaintiff's intestate made a dive from an elevation of seventeen feet above the hard bottom into water three and one-half feet deep, and his head coming in contact with the hard bottom he sustained injuries which caused his death. He could have had no misunderstanding as to the depth of water, for twenty-five or fifty men were there, some of them standing in water at the depth of the waist.

Upon these undisputable facts the question arises whether the recovery in favor of plaintiff can be sustained. The danger of such a plunge would seem to be apparent. If there had been no water there, probably a child would have known better than to have made that headlong plunge from an elevation of seventeen feet. How any man in his senses could imagine that three and one-half feet of water could make the performance safe is difficult to understand. We are clearly of opinion that the facts show such negligence that a nonsuit should have been granted upon that ground. We are also of opinion that no sufficient evidence of defendant's negligence was shown to warrant the submission of that question to the jury. The structure from which the intestate plunged, was clearly not designed to be used in such a manner. Only an athlete of considerable ability would be able to climb to its top. Had it been designed as a platform for divers, some ready means of access would have been provided, and it would not have been so narrow at the top that only a person of pronounced ability in that direction could keep his balance while upon it. The fact that defendant held out the place as proper for bathers, does not show that he guaranteed it safe for people to dive from that structure. We find no evidence that any defect in the bottom caused the injury.

One witness testifies that some days after the accident he found a stone that projected above the sand five inches, but we find no evidence to show that the stone was exposed at the time of the accident. It does not appear that the action of the tide would wash the sand, and it may well be that the sand was worn away so as to expose the stone after the accident. Even if the stone was at that time bare of sand, we do not find evidence that the injury was caused by contact with the stone. It is matter of common knowledge that sand washed by the sea is sufficiently solid to account for the accident in this case.

We find no evidence that defendant failed in any duty that he owed to the bathers, and for this reason, as well as for the reason that intestate was himself guilty of negligence, the judgment must be reversed, new trial ordered, costs to abide event.

BARNARD, P. J., concurred ; DYKMAN, J., not sitting.

Judgment and order denying new trial reversed, and new trial granted, costs to abide event.